UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CIERA BOSTON, | ) | |
| A. T., | ) | |
| A. T., | ) | |
| R. T., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-03279-JRS-MPB |
| | ) | |
| INDIANA DEPARTMENT OF CHILD | ) | |
| SERVICES, | ) | |
| KENDRA GUINAN, | ) | |
| LAURA BOWKER, | ) | |
| | ) | |
| Defendants. | ) | |

**Order on Motion for Summary Judgment (ECF No. 35)**

Plaintiff Ciera Boston, on her behalf and as a next friend of her children, brings this action under 42 U.S.C. § 1983 alleging that Defendants Indiana Department of Child Services ("DCS"), Kendra Guinan, and Laura Bowker (collectively, "Defendants") violated her due process rights by removing her children from her custody. Boston also brings various state-law claims. Defendants move for summary judgment. (ECF No. 35.) Defendants' motion is fully briefed and ripe for decision. Having carefully considered the motion, response, reply, evidence, and applicable law, the Court concludes that the motion should be **granted** for the following reasons.

## I. Background

On September 18, 2017, Boston gave birth to R.T. at St. Francis Hospital in Indianapolis, Indiana. (Ex. B, ECF No. 35-2.) On September 22, 2017, Traci Schank, a

1

social worker at St. Francis Hospital, called the DCS Abuse or Neglect Hotline ("Hotline") to report that R.T.'s umbilical cord blood tested positive for cocaine at birth. (*Id.*; Ex. D, ECF No. 35-4.)  Schank reported to the Hotline that the hospital tested R.T.'s umbilical cord blood because Boston had previously tested positive on April 11, 2017, during a urine drug screen.  (ECF No. 35-2 at 2.)  Additionally, Schank reported to the Hotline that Boston did not have a car seat, crib, or anything else for R.T.  (*Id.*) Boston told Schank that her previous positive drug screen result was due to a false positive, and that she did not have any items for R.T. because she was moving and had bed bugs.  (*Id.*)  Boston also denied ever using cocaine.  (*Id.*)  Later that day, R.T. was medically cleared and scheduled for discharge, and the hospital provided Boston with a "pack and play, car seat, wipes, and clothing."  (*Id.*)

After Schank's report to the Hotline, her report was recommended for assessment, and DCS assigned Family Case Manager Kendra Guinan to assess the case.  (Guinan Decl. ¶ 11, Ex. A, ECF No. 35-1.)  Guinan arrived at the hospital that same day and met with Schank.  (*Id.* ¶ 14.)  Schank showed Guinan the umbilical cord blood test results and confirmed the information she previously reported to the Hotline. (*Id.* ¶ 14; Ex. C, ECF No. 35-3.)  Additionally, Schank told Guinan that the water at Boston's residence was going to be "turned off in the family home soon," and that Boston had no childcare plan in place, as Boston's other two children were, at that time, staying in the hospital room.  (Ex. C., ECF No. 35-3 at 2.)

During her visit, Guinan also met with Boston and informed her that R.T.'s positive umbilical cord blood test result was the reason for the assessment and offered

Boston an oral fluids drug screen, which she denied.  (*Id.*; Guinan Decl. ¶ 18.)  Boston informed Guinan that she had a previous DCS case where she tested positive for cocaine, but indicated that the test was either wrong, tampered with, or was a false positive.  (Guinan Decl. ¶¶ 17, 22; Ex. C at 2.)  On September 17, 2017, Boston had tested negative during a urine drug screen.  (ECF No. 35-2 at 2.)  Boston also stated that she believed the positive umbilical cord blood test result must be related to the previous false-positive DCS test and that she was "advised in the past [by her attorney] not to sign anything or take any drug screens from DCS." (Ex. C at 2.)

A nurse at the hospital informed Guinan that a positive umbilical cord drug test for drugs could indicate the use of drugs as far as twenty weeks prior to the test.[1] (Guinan Decl. ¶ 20; ECF No. 41 at 4.)  Based on the information Guinan gathered during her assessment, she made the decision, after speaking to her DCS advisor, to remove Boston's custody of her children[2] and temporarily place the children, pending a detention hearing, with Boston's sister.  (Guinan Decl. ¶ 31; Ex. C at 2; ECF No. 41 at 5.)

 Guinan provided Boston with a copy of an advisement of rights form, showing Boston's right to a detention hearing within forty-eight hours.  (Guinan Decl. ¶¶ 32–33; Ex. G., ECF No. 35-7.)  Guinan's DCS supervisor emailed several DCS employees to initiate the children in need of services ("CHINS") proceeding in the Johnson

---

[1] Subsequent to the filing of the CHINS petition, Guinan learned that the positive drug test from Boston's previous DCS case occurred on April 4, 2017, outside of the twenty-week look-back window of the umbilical cord blood test.  (Guinan Decl. ¶ 28–30; Ex. E, ECF No. 35-5.)

[2] During Guinan's assessment, Boston's two other children were not present at the hospital; they were instead with Boston's friend.  (Ex. C, ECF No. 35-3.)

3

County, Circuit Court, Juvenile and Family Court Division ("Juvenile Court").  (Ex. H, ECF No. 35-8.)  That email also asked DCS staff attorney Laura Bowker to obtain a hearing with the Juvenile Court, (*id.*; *see also* Ex. J, ECF No. 35-10), which Bowker did shortly thereafter, (Ex. J, ¶¶ 6–7, ECF No. 10).  Bowker subsequently notified the Juvenile Court of the filing of the Report of Preliminary Inquiry.  (*Id.* ¶ 8; *see also* Ex. I at 1.) The CHINS petition was eventually filed by DCS attorney Grace Chimples, and Boston's detention hearing was set for September 26, 2017, at the Juvenile Court. (Ex. J, ¶¶ 9–10, ECF No. 35-10; Ex. I, ECF No. 35-9 at 2.)  At the conclusion of the hearing, the Juvenile Court found that there was insufficient evidence to authorize the finding of a CHINS case because there was "not enough evidence to cement that there [was] recent drug use."  (Ex. K at 9:14–19:19, ECF No. 35-11.)

Boston asserts that Defendants violated her substantive due process rights, alleging violations of her right to familial relations.  She brings these claims under 42 U.S.C. § 1983 and the Indiana Tort Claims Act ("ITCA").  Boston additionally alleges that Defendants are liable for intentional and negligent infliction of emotional distress.  Defendants move for summary judgment.

## II. Legal Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, the district court "must construe all the facts and reasonable inferences in the light most favorable to the nonmoving party," *Monroe v. Ind. Dep't*

*of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017), but the district court must also view the evidence "through the prism of the substantive evidentiary burden," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Discussion

Defendant argues that summary judgment is warranted in this case because (1) R.T., A.T., and A.T. do not state any claims for relief; (2) Defendant Bowker is absolutely immune from suit; (3) DCS is immune from suit under the Eleventh Amendment and the Indiana Tort Claims Act; (4) the removal of Boston's children was supported by reasonable suspicion of imminent harm; (5) Defendants Guinan and Bowker are entitled to qualified immunity and immunity under the Indiana Tort Claims Act; (6) and the Defendants' conduct does not support an intentional or negligent infliction of emotional distress claim.

As a preliminary matter, Boston concedes that R.T., A.T., and A.T. do not state claims for relief. (ECF No. 41 at 6, 10.) Moreover, Boston concedes that Bowker is immune from suit. (*Id.* at 6.) Therefore, to the extent the Complaint alleges any claims by R.T., A.T., and A.T., those claims are **dismissed with prejudice**. Defendants' Motion for Summary Judgment is also **granted** as it relates to all claims against Bowker. The Court addresses Boston's remaining claims in turn.

*A. DCS is Not a "Person" Subject to Suit Under 42 U.S.C. § 1983*

Defendants argue that the Eleventh Amendment bars Boston's claims against DCS because DCS has not consented to this Court's jurisdiction or waived its immunity. Boston, however, argues that, even though DCS has not consented to this Court's jurisdiction, DCS availed themselves to this Court's jurisdiction by seeking removal to this Court.

The Eleventh Amendment "grants states immunity from private suits in federal court without their consent." *Nuñez v. Ind. Dept. of Child Servs.*, 817 F.3d 1042, 1044 (7th Cir. 2016). Indeed, absent a state's consent, a valid Congressional override, or waiver, suits against state agencies are barred by the Eleventh Amendment. *See Ind. Prot. & Advoc. Servs. v. Ind. Fam. & Soc. Servs. Admin.*, 603 F.3d 365, 370 (7th Cir. 2010); *see also Hetherington v. Dep't of Child Servs.*, No. 2:11-cv-62, 2012 WL 523712, at *3 (N.D. Ind. Feb. 14, 2012). However, a state may waive its immunity by removing claims to federal court. *Bd. of Regents of U. of Wisc. Sys. v. Phoenix Intern. Software, Inc.*, 653 F.3d 448, 461 (7th Cir. 2011).

Here, by removing this case to federal court, DCS waived its immunity. Nevertheless, Boston's claims against DCS fail because DCS is not a "person" subject to suit under § 1983. *See Lapides v. Bd. of Regents of the U. Sys. of Ga.*, 535 U.S. 613, 617 (2002) (stating that even though defendants removed the §1983 claim to federal court, that claim could not go forward "because a state is not a 'person' for the purposes of § 1983"). "Every person who, under the color of . . . [law] subjects, or causes to be

subjected, any citizen of the United States . . .to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. States, however, are not "persons" liable for money damages under § 1983. *Will v. Mich. Dep't of Soc. Servs.*, 491 U.S. 58, 64 (1989). Because DCS is considered an arm of the state of Indiana, it is not considered a "person" under § 1983. *See Will*, 491 U.S. at 70; *see also Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015); *Lamaster v. Ind. Dep't of Child Servs.*, No. 4:18-cv-00029, 2019 WL 1282043, at *5 (S.D. Ind. Mar. 20, 2019) (citing *Nuñez*, 817 F.3d at 1044). Similarly, to the extent Boston alleged claims against the rest of the Defendants in their official capacities, they too are not considered "persons" under § 1983. *See Will*, 491 U.S. at 71. Therefore, Defendants' Motion for Summary Judgment is **granted** as it relates to Boston's due process claims against DCS.

### B. Guinan's Immunity from Suit

Although Guinan is a person subject to suit under § 1983, Defendants argue that Guinan is immune from suit under the doctrine of qualified immunity. Family case managers are entitled to qualified immunity when taking initial custody of children from their parents. *Millspaugh v. Cnty. Dep't of Pub. Welfare of Wabash Cnty.*, 937 F.2d 1172, 1176 (7th Cir. 1991). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "In general, once the defendants raise the

qualified immunity defense, the plaintiff must show two things: first, that there has been a violation of one or more of her federal constitutional rights, and second, that the constitutional standards at issue were clearly established at the time of the alleged violation." *Figgs v. Dawson*, 829 F.3d 895, 906 (7th Cir. 2016) (quoting *Campbell v. Peters*, 256 F.3d 695, 699 (7th Cir. 2001)).

### 1. The Right to Familial Relations

Boston first asserts that her right to family relations was violated. Families have a right to remain together without the coercive interference of the government under the substantive component of the Due Process Clause of the Fourteenth Amendment. *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 478 (7th Cir. 2011). Indeed, "the Supreme Court has long recognized as a component of substantive due process the right to familial relations." *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1018 (7th Cir. 2000). The fundamental right to familial relations is not absolute, but "must be balanced against the state's interest in protecting children from abuse." *Foster*, 657 F.3d at 478 (quoting *Siliven v. Ind. Dep't of Child Servs.*, 635 F.3d 921, 928 (7th Cir. 2011)).

"To achieve the proper balance, caseworkers must have 'some definite and articulable evidence giving rise to a reasonable suspicion' of past or imminent danger of abuse before they may take a child into protective custody." *Id.* (quoting *Brokaw*, 235 F.3d at 1019). "A reasonable suspicion requires more than a hunch but less than probable cause and 'considerably less than a preponderance of the evidence.'" *United States v. Oglesby*, 597 F.3d 891, 894 (7th Cir. 2010) (quoting *Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2008)). Moreover, "[d]etermining whether a [caseworker] had

reasonable suspicion is assessed considering the totality of the circumstances and 'common-sensical judgments and inferences about human behavior.'"   *Id.* (quoting *United States v. Baskin*, 401 F.3d 788, 791 (7th Cir. 2005)).

Defendants assert that the facts known to Guinan at the time of the removal show that she had reasonable suspicion to believe that the children were in imminent danger of abuse or neglect.   Defendants specifically allege that:

> Guinan made her decision to remove the children from Boston's custody because of the positive umbilical cord blood test, the lack of parental cooperation by Boston and [A.T.'s father], the fact that the water was going to be shut off to Boston's home, the fact that Boston lacked the basic necessities to care for her newborn before the hospital provided those supplies, and her knowledge of DCS's previous involvement with the family.

(ECF No. 36 at 4.)   Boston argues, however, that Guinan's "suspicion was not reasonable as Guinan ignored various pieces of information that was [sic] presented to her[,] . . . [and] the DCS investigation here ignored several key pieces of information." (ECF No. 41 at 9.)   For example, Boston asserts that Guinan ignored the "September 17, 2017 negative drug test and the fact that R.T. was 'medically good,'" and that Guinan did not investigate "whether the lack of water would be a short-term issue." (*Id.*)

Simply, Boston asserts that Guinan's decision was based on not more than a hunch.   The Court disagrees with Boston for two reasons.   First, construing all facts and reasonable inferences in the light most favorable to Boston, the totality of the circumstances show that Guinan had reasonable suspicion.   R.T.'s birth sparked a call to the Hotline because his umbilical cord blood tested positive for cocaine.   While this would seem to be reasonable suspicion enough, there is more.   After a formal

report was made to the Hotline and Guinan was assigned the case, she went to the hospital to investigate.  The undisputed facts show that R.T.'s umbilical cord tested positive for cocaine; that the water at Boston's residence would soon be shut off; that Boston did not have a car seat or other necessary items with her, so  the hospital provided her those items; that Boston's other two minor children were at that hospital against hospital policy, until both children eventually went to stay with one of Boston's friends; that Boston had previous involvement with DCS for a positive, albeit disputed drug test result; and that R.T. was scheduled to be released from the hospital that day despite the apparent inability to provide a safe home at that time.

Based on those undisputed facts, and Guinan's "common-sensical judgments," *Baskin*, 401 F.3d at 791, Guinan had more than a hunch; indeed, she met at least the low bar required by the reasonable suspicion standard.  Boston's argument that Guinan "ignored various pieces of information," is irrelevant because those facts do not offset the undisputed facts Guinan relied on—those facts are not outcome determinative, *see Harper v. Vigilant Ins. Co.*, 433 F.3d 709, 713 (7th Cir. 2009).  On the contrary, requiring Guinan to further investigate would be to suppose that Guinan was required to meet a tougher standard than the reasonable suspicion standard.  Boston also argues that certain facts, which Guinan relied on to make her removal decision, did not create imminent harm, (*see, e.g.*, ECF No. 41 at 8 ("A lack of clothes, wipes, car seat, and crib at the hospital does not create imminent harm").)  However, Boston's reliance on certain individual facts to show that Guinan did not have reasonable suspicion of imminent harm is misguided, since "[d]etermining whether a

10

[caseworker] had reasonable suspicion is assessed considering the totality of the circumstances . . . ." *Baskin*, 401 F.3d at 791 (emphasis added).

Second, Boston inappropriately relies on certain facts to allege that Guinan did not have reasonable suspicion.  For example, Boston states a reason for why her water bill was not paid and why she did not have items with her at the hospital.  (ECF No. 41 at 3–4.)  But her reliance on those facts is inapt because those facts came to light at Boston's detention hearing, *after* Guinan made the decision to remove Boston's children from her custody, and "[i]n the context of removing a child without a court order, the 'focus is on the facts and circumstances *known to defendants at the time they decided to remove [the child]* . . . .'"  *VanWinkle v. Nichols*, No. 1:15-cv-01082, 2017 WL 4224767, at *19 (S.D. Ind. Sept. 22, 2017) (quoting *Hernandez*, 657 F.3d at 475) (emphasis added).  Even if these facts had been known to Guinan at the time though, such additional facts are irrelevant because, as previously noted, additional mitigating facts do not offset the undisputed sufficient facts Guinan relied on including at least the positive umbilical cord test.  Here, the undisputed facts known to Guinan when she decided to remove Boston's children led her to believe removal was warranted, and the Court finds that a prudent caseworker, on those facts, could have believed R.T. faced immediate harm.  Therefore, Boston has not met her burden showing that her right to familial relations was violated.  This failure is enough to defeat her claim.

2. Clearly Established Constitutional Standards

Even if Boston could show that her right to familial relations was violated, she fails to show "that the constitutional standards at issue were clearly established at the time of the alleged violation." *Figgs v. Dawson*, 829 F.3d at 906 (quoting *Campbell v. Peters*, 256 F.3d at 699).  The Seventh Circuit has noted that, usually, "because the balance between a child's liberty interest in familial relations and a state's interest in protecting the child is nebulous at best, social workers and other state actors who cause a child's removal are entitled to qualified immunity because the alleged constitutional violation will rarely—if ever—be clearly established." *Brokaw*, 235 F.3d at 1022.  "Social workers often act on limited information; those who tarry, or resolve all doubts in favor of the parents, chance enduring damage to the children.  Immunity helps social workers put their private interests aside and concentrate on the welfare of children." *Millspaugh*, 937 F.2d at 1176–77.

Ordinarily, "[t]o prove the presence of a clearly established constitutional right, the plaintiff must point to closely analogous cases decided prior to the defendants' challenged actions." *Upton v. Thompson*, 930 F.2d 1209, 1212 (7th Cir. 1991) (internal quotation marks omitted).  "The law is 'clearly established' when 'various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand.'" *Figgs*, 829 F.3d at 905 (quoting *Campbell v. Peters*, 256 F.3d 695, 701 (7th Cir. 2001)).  It is not necessary, however, for the plaintiff to "point to an identical case." *Reed v. Palmer*, 906

F.3d 540, 547 (7th Cir. 2018).  Courts "look first to controlling Supreme Court precedent and our own circuit decisions on the issue." *Id.* (quoting *Jacobs v. City of Chicago*, 215 F.3d 758, 767 (7th Cir. 2000)).  "If no controlling precedent exists, courts 'broaden [their] survey to include all relevant caselaw in order to determine whether there was such a clear trend in the caselaw that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time.'" *Id.* (quoting *Jacobs*, 215 F.3d at 767).

Alternatively, "'[i]n some rare cases, where the constitutional violation is patently obvious, the plaintiffs may not be required to present the court with any analogous cases." *Id.* (quoting *Jacobs*, 215 F.3d at 767); *see also Brokaw*, 235 F.3d at 1022. "Instead, plaintiffs can demonstrate clearly established law by proving the defendant's conduct was so egregious and unreasonable that . . . no reasonable [official] could have thought he was acting lawfully.'" *Reed*, 906 F.3d at 547 (quoting *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 724 (7th Cir. 2013)).  Therefore, "[c]ases claiming governmental interference with the right of family integrity are properly analyzed by placing them, on a case by case basis, along a continuum between the state's clear interest in protecting children and a family's clear interest in privacy." *Brokaw*, 235 F.3d at 1022 (quoting *Morris v. Dearborne*, 181 F.3d 657, 671 (7th Cir. 1999)).

Boston argues that *Finnegan v. Myers*, No. 3:08-cv-503, 2015 WL 5252433, at *1 (N.D. Ind. Sept. 8, 2015), is analogous to prove the presence of a clearly established constitutional right in this case.  Defendants reply that *Finnegan*, a district court case without precedential effect, is not analogous.  The Court disagrees with Boston

because *Finnegan* is not closely analogous to this case. *Finnegan*'s facts are complex and involve DCS removing the plaintiff's children after one of plaintiff's daughters tragically died. *Id.* at *6–11. In *Finnegan*, there were also multiple investigations, hearings, and civil and criminal actions, not to mention the children were removed for a lengthy period. *Id.* Here, the facts are not analogous. Boston also asserts that Guinan ignored pieces of information provided to her, like the investigators in *Finnegan*. But the information that Guinan allegedly ignored,[3] here, is far from analogous to the information that the investigators ignored in *Finnegan*. For example, in *Finnegan*, the defendants allegedly consistently ignored exculpatory evidence and went so far as to deliberately withhold it from the plaintiff, the Coroner, and the courts during the post-deprivation process. *Id.* at *22. Here, no such analogous information was ignored. And, in any event, a lone district court case does not make a right clearly established for qualified-immunity purposes.

Although Boston does not point to a closely analogous case, she can still prove the presence of a "clearly established constitutional right by showing that the violation was so obvious that a reasonable person would have known of the unconstitutionality of the conduct at issue." *Brokaw*, 235 F.3d at 1022. Defendants argue that Boston fails in this respect because Boston does not "refute much of the evidence Guinan used to make her removal decision, but instead argues that Guinan should have considered other information or conducted further investigation to arrive at a different

---

[3] The Court reiterates that much of the information Boston claims Guinan ignored came to light during the detention hearing and was not known to Guinan at the time she made her decision to remove R.T., A.T., and A.T. Also, that information does not undermine the conclusion the decision here met the reasonable suspicion standard.

conclusion . . . ."  (ECF No. 42 at 4.)  The Court agrees with Defendants.  Indeed, construing all facts and reasonable inferences in the light most favorable to Boston, she simply fails to show that Guinan's "conduct was so egregious and unreasonable that . . .  no reasonable [official] could have thought he was acting lawfully.'" *Reed*, 906 F.3d at 547 (quoting *Abbott*, 705 F.3d at 724).

Guinan is entitled to qualified immunity because Boston has not met her burden of showing either that there has been a violation of her right to familial relations or that the constitutional standards at issue were clearly established at the time of the alleged violation.  *See Figgs*, 829 F.3d at 906.  Therefore, Defendants' Motion for Summary Judgment is **granted** as it relates to Boston's substantive due process claims against Guinan.

### C. Absolute Immunity

Boston's Complaint alleges that Guinan "knew or should have known that the evidence in her possession was insufficient to file a CHINS petition."  (Compl. ¶ 33, ECF No. 1-1.)  However, Guinan did not file the CHINS petition; DCS attorney Grace Chimples did, and she did so at the direction of Guinan's DCS supervisor.  So, Guinan was at least twice removed from the filing of the petition.  But even if Guinan had filed the CHINS petition in this case, or perhaps misinformed her supervisor, Guinan would nonetheless be subject to absolute immunity, *see infra*.

In her response, Boston for the first time also alleges that Guinan omitted, mis-characterized, and provided false information to the Juvenile Court.  (ECF No. 40 at 10.)  Boston asserts that because Guinan "knew" that she had basic necessities in her

possession, that the lack of running water at Boston's residence was temporary, and that she had a negative urine test, the manner in which Guinan reported these issues to the trial court was "misconduct." (*Id.*)  Furthermore, Boston argues that "Guinan manipulated the information presented to the DCS Attorney and the Court when she neglected to include important information and assert that Boston did not have a car seat or crib and that parental cooperation was lacking." (*Id.*)

Boston's arguments, however, are unavailing.  Not only was it DCS Attorney Chimples that signed and filed the CHINS Petition, which was also signed by Guinan's supervisor rather than by Guinan, but Boston does not point to any evidence to show that Guinan manipulated the information presented to the DCS Attorney or the Court.  In fact, the CHINS Petition alleged, in relevant part, that:

> The family was the subject of a previous . . . CHINS case from March 2017 until June 2017, filed due to concerns for [sic] substance abuse and domestic violence in the home.  The child [RT] tested positive for cocaine at birth.  At the time of [RT's] birth, parents stated to hospital staff that they lacked appropriate items for the newborn.  Parents also stated that the water at their residence was about to shut off.  Ms. Boston acknowledged that she had tested positive for cocaine in a previous DCS CHINS case, but denied any cocaine use and offered multiple explanations for how she and the child would have tested positive, including possibly using someones toothbrush who had used cocaine, accidentally touching cocaine, and falsification of the test results. . . . Additionally, between February 2017 and May 2017 there were six (6) police runs to the home with concerns for domestic violence, most of which occurred while the previous CHINS case was open.

(CHINS Petition at 2, ECF No. 35-9.)  The facts alleged in the petition are consistent with Guinan's investigation and report and have not been disputed.  Further, Boston does not point to any evidence—e.g., no affidavit, no ruling from the Juvenile Court, etc.—to show that Guinan omitted, mischaracterized, or provided false information

to the Juvenile Court. Indeed, based on the undisputed facts, there is no evidence from which the Court could make a reasonable inference that Guinan omitted, mischaracterized, or provided false information to the Juvenile Court. Finally, the Juvenile Court did not find that Guinan provided false information. Instead, the Juvenile Court ruled in Boston's favor based on the "insufficiency" of the evidence.

Yet, even if Guinan had attempted to mislead the Juvenile Court, she would be entitled to absolute immunity for acts taken during the initiation of child-welfare court proceedings. In *Millspaugh*, the plaintiffs alleged that a social worker caused the plaintiffs a deprivation of their children by improperly making arguments to the court, furnishing or withholding evidence. 937 F.2d at 1175. The Seventh Circuit found that, even assuming the social worker "acted out of improper motives and misled the court," she was entitled to absolute immunity. *Id.* Indeed, the court held "that social workers and like public officials are entitled to absolute immunity in child custody cases on account of testimony and other steps taken to present the case for decision by the court." *Id.* at 1176.

Here, because the submission of the CHINS petition was done to ask a judicial offer to take judicial action, if Guinan did submit the CHINS petition to the court, that act would be subject to absolute immunity. Furthermore, even if Guinan had omitted, mischaracterized, and provided false information to the Juvenile Court, she would be entitled to absolute immunity.

17

### D. State-Law Claims

Having dismissed all federal claims on the merits, and there being no indication of diversity jurisdiction at least because the parties are not diverse, 28 U.S.C. § 1332(a), the Court could choose not to exercise its discretion to retain jurisdiction over the remaining state law claims. 28 U.S.C. § 1367. However, the facts and posture of this case, along with notions of judicial economy counsel for the Court to exercise its jurisdiction here. *See Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007) ("Jurisdiction over supplemental claims should be retained even though the federal claims have dropped out: where the statute of limitations would bar the refiling of the supplemental claims in state court . . . ; where substantial federal judicial resources have already been expended on the resolution of the supplemental claims; and where it is obvious how the claims should be decided.").

Defendants assert that (1) DCS is entitled to immunity under the ITCA, (2) that Guinan is immune from suit under the ITCA for acts performed in the scope of her official duties, (3) that Defendants' conduct does not support an intentional infliction of emotional distress claim, and (4) the Defendants' conduct does not support a negligent infliction of emotional distress claim. The Court addresses these in turn.

### 1. DCS is Entitled to Immunity Under the ITCA

DCS contends that it is immune under the ITCA, codified in Indiana Code § 34-13-3-3(6). Under the ITCA, a "governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from . . . [t]he initiation of a judicial . . . proceeding." Ind. Code § 34-13-3-3(6). Section "34-13-3-3(6)

protects state officials and employees from suits brought by those who were the sub-
ject of or experienced a loss from a civil or criminal adjudication." *F.D. v. Ind. Dep't
of Child Servs.*, 1 N.E.3d 131, 137 (Ind. 2013). "A judicial proceeding in the context
of governmental immunity has been defined as a proceeding for the purpose of ob-
taining such remedy as the law allows." *Ind. Dep't of Fin. Insts. v. Worthington
Bancshares, Inc.*, 728 N.E.2d 899, 902 (Ind. Ct. App. 2000) (internal quotations omit-
ted).

Defendants further assert that if a party's action is taken *leading to* a judicial
proceeding, the underlying conduct is immune under the ITCA. Defendants point to
two cases to back their point. First, in *Worthington*, after an audit found substantial
losses, the defendant took action to close the plaintiff's bank. 728 N.E.2d at 901. The
plaintiff sued the defendants for damages arising from its action to close the bank,
and the defendants moved for summary judgment, alleging judicial or administrative
proceeding immunity. *Id.* The Indiana Court of Appeals held that the defendant's
actions of placing the bank in receivership were entitled to immunity. *Id.* Next, in
*Hedges v. Rawley*, 419 N.E.2d 224, 225–26 (Ind. Ct. App. 1981), the plaintiff, a super-
intendent at a municipal sewage treatment plant, suspended two of his employees
pending a police investigation. The court again concluded the ITCA granted the as-
sistant superintendent immunity because he participated in the initiation of a judi-
cial proceeding. *See id.* at 228.

Given the holdings in *Worthington* and *Hedges*, that immunity extends to the con-
duct that occurred before the initiation of judicial proceedings, Defendants contend

19

DCS is entitled to immunity.  In response, Boston argues that DCS is not immune from suit under the ITCA because the actions of Guinan were "not within the scope of any appropriate official duties."  (ECF No. 41 at 11.)

"To be within the scope of employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized." *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453 (Ind. 2000) (citing Restatement (Second) Agency § 229 (1958)).  "[T]o be incidental, however, [an act] must be one which is subordinate to or pertinent to an act which the servant is employed to perform." *Id.* (citing Restatement (Second) Agency § 229 cmt. b).  Even tortious, malicious, or criminal acts may fall within the scope of employment." *See Burton v. Benner*, 140 N.E.3d 848, 853 (Ind. 2020).

Here, Boston again alleges without support that Guinan's actions were not in the scope of employment because Guinan omitted, mischaracterized, and provided false information to the Juvenile Court.  As the Court found above, Boston does not point to any evidence to show that Guinan omitted, mischaracterized, or provided false information to the Juvenile Court.  Therefore, Boston's argument fails because Guinan actions leading to the initiation of a judicial proceeding were within the scope of her employment.  And even if Guinan had omitted, mischaracterized, or provided false information to the Juvenile Court, her actions would still have been within the scope of employment. *See Ball v. Jones*, 52 N.E.3d 813, 820–21 (Ind. Ct. App. 2016) (holding, on appeal of a summary judgment ruling, that a police officer's action of falsifying a probable cause affidavit "was incidental to the conduct authorized" by his employer

and "to an appreciable extent to further his employer's business" such that the officer was within the scope of employment and cloaked with immunity).

Moreover, even if Guinan's actions were outside the scope of her employment, Boston has argued her way out of court.  Under the doctrine of respondeat superior, an employer is only liable for damages "for the wrongful acts of its employees which are committed within the scope of employment." *Knighten v. E. Chi. Housing Auth.*, 45 N.E.3d 788, 792 (Ind. 2015) (quoting *Sword v. NKC Hosps., Inc.*, 714 N.E.2d 142, 148 (Ind. 1999) (emphasis added).  Here, if Guinan's acts were outside the scope of her employment, DCS cannot be held liable.  Boston's Claims against DCS therefore fail, and Defendants' Motion for Summary Judgment is **granted** as it relates to Boston's state-law claims against DCS.

### 2. Guinan is Entitled to Immunity Under the ITCA

Boston alleges that her rights were violated when Guinan removed her children as part of Guinan's initial CHINS assessment made at the hospital.  (Compl. ¶ 31–32, ECF No. 1-1.)  Defendants argue that Guinan's removal of Boston's children was in the scope of her employment, and, therefore, Guinan is entitled to immunity under the ITCA.  Defendants have the better argument.

The ITCA "governs lawsuits against political subdivisions and their employees." *Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind. 2003) (citing Ind. Code § 34-13-3 1 *et seq.*).  "The statute sets forth certain parameters to determine liability for negligent acts or omissions on the part of government employees and 'provides substantial im-

munity for conduct within the scope of the employee's employment.'" *Burton v. Benner*, 140 N.E.3d 848, 852 (Ind. 2020) (quoting *Bushong*, 790 N.E.2d at 472).   "The purpose of immunity is to ensure that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment." *Celebration Fireworks*, 727 N.E.2d at 452 (citation omitted).

Here, Guinan's actions were clearly in the scope of her employment.   A complaint to the DCS Abuse or Neglect Hotline was recommended for assessment and assigned to Guinan.   After being assigned the case, Guinan went to St. Francis Hospital to meet with Ms. Schank and Boston.   After her assessment, Guinan made the determination that Boston's children should be removed.   All of Guinan's actions were done during her official duties with the state of Indiana—during the scope of her employment.   Because Boston's claims against Guinan are for actions Guinan took during the scope of her employment, those claims are barred under the ITCA.   *See* Ind. Code 34-13-3-5(b).

Furthermore, Boston's remaining and already refuted argument, that Guinan provided misinformation to the DCS attorney and the Juvenile Court was not in the scope of her official duties, is inapt. Indeed, the Court previously found, *see supra* Section D.1, that, even taking Boston's allegations as true (that Guinan falsified information in the CHINS petition), Guinan was acting within the scope of her employment.   *See Ball*, 52 N.E.3d at 820–21.   Furthermore, Boston does not present any evidence, provide any argument, or point to any case law to support the bald assertion

that Guinan's acts were "clearly outside the scope of [her] employment." Ind. Code § 34-13-3-5(c)(2).  Thus, Guinan is entitled to immunity under the ITCA.

### 3. Intentional Infliction of Emotional Distress

The tort of intentional infliction of emotional distress ("IIED") "arises when a defendant: (1) engages in 'extreme and outrageous' conduct that (2) intentionally or recklessly (3) causes (4) severe emotional distress to another." *Creel v. I.C.E. & Assocs., Inc.*, 771 N.E.2d 1276, 1282 (Ind. Ct. App. 2020) (quoting *Bradley v. Hall*, 720 N.E.2d 747, 752 (Ind. Ct. App. 1999)).  "The requirements to prove this tort are 'rigorous,' *id.* (quoting *Ledbetter v. Ross*, 725 N.E.2d 120, 124 (Ind. Ct. App. 2000)), and "the conduct at issue must exceed all bounds usually tolerated by a decent society and cause mental distress of a very serious kind," *id.*  That is, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  *Id.* (quoting Restatement (Second) of Torts §46)).

Here, Boston provides a few arguments to support her claim of IIED, none of which are compelling.  Boston essentially argues that Guinan's alleged actions, providing false information, mischaracterizing events, and initiating a CHINS action against parents that may be struggling financially, allegations which the Court has found to be unsupported, absolutely shock the conscience.  Boston provides no additional support for her assertions. The Court finds that Guinan's conduct was not so outrageous in character that it could be considered "utterly intolerable in a civilized community."

*Creel*, 771 N.E.2d at 1282; *see also Seiwert v. Spencer-Owen Cmty. Sch. Corp.*, 497 F. Supp.2d 942, 957 (S.D. Ind. 2007). But even if Guinan's conduct met that rigid standard and proved the "extreme and outrageous" element of an IIED claim, Boston fails to prove any of the additional elements of IIED; most importantly Boston cannot prove intent. *See id.* ("The intent to harm emotionally constitutes the basis of this tort.") Indeed, construing all facts and reasonable inferences in the light most favorable to Boston, she cannot show that Guinan intended to cause emotional harm to Boston. Therefore, Defendants' Motion for Summary Judgment is **granted** as it relates to Boston's claim of IIED.

###### 4.Negligent Infliction of Emotional Distress

Boston's claim of negligent infliction of emotional distress ("NIED") meets a similar fate as her IIED claim. An NIED claim can arise from (1) a physical "injury"; (2) a physical "impact," which requires some type of physical contact but no injury, such as being involved in a car accident; or (3) being a bystander to the death or severe injury of a loved one. *See Smith v. Toney*, 862 N.E.2d 656, 658 (Ind. 2007). Boston was not physically injured and did not suffer a physical impact. She instead alleges that *she* experienced "physical involvement by being physically separated from her children." (ECF No. 41 at 12.) "Physical involvement" does not rise to the level of a physical injury or impact. *Spangler v. Bechtel*, 958 N.E.2d 458, 465 (Ind. 2011) (stating that under the modified impact rule, recovery is permitted "so long as the plaintiff *personally sustained* a physical impact, in addition to emotional distress damages") (emphasis added). Therefore, the only theory of NIED that Boston can assert given

the facts of this case is the bystander theory.  The Court, in determining as a matter of law whether to preclude liability for bystander recovery for NIED, considers (1) the severity of the victim's injury, (2) the relationship of the plaintiff to the victim, and (3) circumstances surrounding the plaintiff's discovery of the victim's injury.  *See id.* at 660.  Boston's claim fails because, construing all facts and reasonable inferences in the light most favorable to her, she does not allege, and the evidence does not show, that any of her children were injured during the removal process.  Therefore, Defendants' Motion for Summary Judgment is **granted** as it relates to Boston's NIED claim.

*E. Remaining Issues*

Boston's Complaint states the words "procedural due process,"(Compl. ¶ 30, ECF No. 1-1), but it does not appear that Boston has pursued or otherwise made out a claim for procedural due process against Defendants.  Indeed, Boston has abandoned any potential procedural due process claim, *see Palmer v. Marion Cnty.*, 327 F.3d 588, 597–98 (7th Cir. 2003), because she fails to address any such claim in her statement of claims, (ECF No. 33), or in her response to Defendants' motion for summary judgment, (ECF No. 41).  In short, to the extent she makes any allegations of a procedural due process violation, it does not appear that she states a claim.

Likewise, Boston's nebulous claim that Defendants violated her due process rights by inferring drug use meets a similar fate.  To the extent Boston is alleging a procedural due process claim, she failed to address any such claim in her response, (*see* ECF No. 41), thereby abandoning any such claim, *see id.*

## IV. Conclusion

For the above reasons, Defendants' Motion for Summary Judgment (ECF No. 35) is **granted**.  All claims against Defendant Bowker, including malicious prosecution, are **dismissed with prejudice** because Boston concedes Bowker is immune from suit.  All claims against Defendant Indiana Department of Child Services, including abuse of process, are **dismissed with prejudice** because DCS is not a "person" under § 1983 and is immune under the Indiana Tort Claims Act.  All claims against Defendant Guinan, in her official capacity, are **dismissed with prejudice** because Guinan is shielded by absolute immunity, qualified immunity, and the ITCA.  And, Plaintiff's claims of intentional infliction of emotional distress and negligent infliction of emotional distress are **dismissed with prejudice** because Plaintiff has not met her burden of proof on either claim.  Judgment will issue under separate order.

**SO ORDERED.**

Date: 3/2/2021

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Brandon Carothers
INDIANA ATTORNEY GENERAL
bcarothers@atg.in.gov

Robert E. Shive
EMSWILLER WILLIAM NOLAND & CLARKE
rshive@ewnc-law.com

Jordan Michael Stover
INDIANA ATTORNEY GENERAL
jordan.stover@atg.in.gov

DawnMarie White
EMSWILLER WILLIAM NOLAND & CLARKE
dmwhite@ewnc-law.com